STATE, ex rel. BOARD OF COUNTY COMMISSIONERS OF
MAHONING COUNTY, Plaintiff, v. RHODES, Auditor et,
Defendants.

Common Pleas Court, Franklin County.

No. 196700.   Decided February 15, 1960.

*Mr. William A. Ambrose*, prosecuting attorney, and *Mr. Milton L. Farber*, special counsel, for plaintiff.

*Mr. Mark McElroy*, attorney general, and *Mr. Joseph S. Gill*, special counsel, for defendant.

LEACH, J. This case is before the court on the motion of the defendants for judgment in their favor on the pleadings.

This action brought by the Board of County Commissioners of Mahoning County seeks in effect to recover from the State of Ohio the sum of $35,797.98 as moneys now in the treasury of the state allegedly overpaid by Mahoning County to the state during the years 1931 to 1942, under the provisions of then existing Sections 1815-12 and 1815-2, General Code, for support of inmates committed to an institution for the feeble minded. The state as such is not named as a party defendant apparently on the basis of the necessary recognition of the fact that Section 16 of Article I of the Ohio Constitution is not self-executing and in the absence of enabling legislation suit may not be brought against the state. *Raudabaugh* v. *State,* 96 Ohio St., 513; *Palumbo* v. *Industrial Commission of Ohio,* 140 Ohio St., 54; *State, ex rel. Williams* v. *Glander,* 148 Ohio St., 188.

Nor does this action seek to recover such alleged overpayment directly by the process of ordering repayment from the treasury of the state, apparently on the basis of the necessary recognition that Section 22, Article II of the Ohio Constitution, provides that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law. *Grandle* v. *Rhodes,* 169 Ohio St., 77.

Instead, the alleged overpayment is sought to be recovered from the state by, in effect, asking this court, first, to determine the amount of the overpayment and to then effectuate its collection by enjoining the auditor, treasurer and director of finance of the state from collecting or attempting to collect from various county officers of Mahoning County moneys in their possession which otherwise would be payable under existing law from such county officers to the state, until such time as the overpayment has, in effect, been repaid to Mahoning County by the process, we assume, of authorizing such county officers to pay into the general treasury of Mahoning County the sum

of $35,797.98 out of moneys in their possession which otherwise would be required to be paid by them to the state.

The motion for judgment on the pleadings herein is predicated on the assertion, 1) that no cause of action is stated, and 2) that any cause of action which otherwise might have existed is barred by the statute of limitations.

The petition herein, except for the fact that it is brought by the Board of County Commissioners of Mahoning County instead of by the prosecuting attorney of Fulton County and except as to the amount of alleged overpayment, is identical to the petition which is set forth in detail in *State, ex rel. Barber,* v. *Rhodes et al.,* 165 Ohio St., 414, with the additional distinction that in that case, brought in the Common Pleas Court of Fulton County, the county officers also were made parties defendant and the prayer asked not only that the state officers be enjoined from collecting or attempting to collect such moneys, but also, that the county officers be enjoined from paying the same until, in effect, the amount enjoined would equal the amount of the overpayment.

For the sake of brevity therefore, we will not set forth the petition in full, but instead, will allude to particular provisions as they are being discussed herein.

The answer of the defendants herein admit that for the year 1931, Mahoning County paid the State of Ohio for the support of inmates in feeble minded institutions of the state who were committed from Mahoning County on the basis of $5.50 per week for each person committed; that from 1932 to 1942 inclusive said county paid for said purpose on the basis of $3.50 per week for each person so committed; that Mahoning County was given credit of $2.00 per week for each person charged for on the basis of $5.50 per week and that in 1947, the State of Ohio paid to said county the sum of $22,057.42 as a refund of charges made for the support of persons so committed. The answer also admits the proceedings in this court by the Board of County Commissioners of Franklin County which hereafter will be referred to as the *Shade case.*

In effect therefore, the answer denies that there was any overpayment and also denies the alleged agreement with the then attorney general of Ohio, to "adjust the claim of Mahoning

County on the identical terms as those arrived at with Franklin County." For the purpose of this motion for judgment on the pleadings, however, these allegations of the petition must be accepted as being true.

The answer also asserts that no cause of action is stated in favor of plaintiff against the defendants and that the cause of action alleged in the petition did not accrue within six years next before the commencement of this action and thus is barred by the statute of limitations. These, of course, present solely legal questions which will be considered herein. In connection with the statute of limitations question it should be noted that the petition herein was filed, on November 30, 1956.

By way of new matter the answer alleges:

"Further answering, said defendants say that the General Assembly of the State of Ohio on June 14, 1947 passed House Bill No. 495 of the 97th General Assembly, and that said Bill was approved by the Governor on June 27, 1947 and filed in the office of the Secretary of State on June 28, 1947. Said House·Bill No. 495 was the general appropriation bill for the biennium beginning January 1, 1947 and ending December 31, 1948, and provided in part as follows:

" 'DEPARTMENT OF PUBLIC WELFARE DIVISION OF BUSINESS ADMINISTRATION

" '* * *          * * *          * * *

" 'Adjustment of Overcharges for Maintenance and Care of Feeble-Minded Patients ..............$425,000.00

" 'The above appropriation shall be available and shall be used only for the purpose of effecting a final and complete settlement of all controversies between the state and the various counties growing out of charges made by the state to the various counties for the maintenance and care of patients committed to the state's institutions for feeble-minded.

" 'The moneys appropriated shall be distributed to those counties entitled thereto which are not presently indebted to the state. Counties which are presently indebted to the state shall, in lieu of distribution of any of the above moneys, have the amounts which may be due them credited against their indebtedness. The determination of the amount to be paid or credited to each county, as the case may be, shall be made by the Director of the Department of Public Welfare, and the Auditor of State,

upon order of the Director of the Department of Welfare, shall distribute the moneys appropriated, to the counties and in the amounts designated in such order. Such distribution or credit shall, with respect to each county, be in full and complete satisfaction and settlement of all claimed and alleged overcharges made by the state to the various counties for the maintenance and care of patients committed to and maintained in the feeble-minded institutions of the state.' "

Although plaintiff herein has filed a reply which, in effect consists of a general denial of all of the new allegations of the answer, we conclude that we can and we do take judicial notice of the fact that the 97th General Assembly in 1947 did pass House Bill No. 495 and that it did contain the language quoted above. We see no basic distinction between the power of this court to take judicial notice·of the so-called permanent laws, as contained in the General Code, of the State of Ohio and of other laws passed by the General Assembly. To deny by reply that such an act had been passed or the language thereof, in effect, is a sham pleading and to such extent may be disregarded.

In order to fully comprehend the basic issues here involved, it is necessary to first understand something of the legislative and judicial history of the existing controversy.

The present action is the culmination of a series of events that began in 1919 and the direct outgrowth of the case of *Shade, et al.*, v. *Ferguson et al.*, Court of Common Pleas of Franklin County, No. 152,891 (Court of Appeals No. 3715). A portion of the litigation in the *Shade case* is reported in 11 Ohio Opinions 371 and 44 Ohio Law Abs., 332.

From 1919 until January 1, 1943, the state law provided that the county should be liable for the support of an inmate of an institution for the feeble minded, provided the same was not paid otherwise was provided by law. Section 1815-12, General Code, in force and effect at that time read in part as follows:

"Section 1815-12, General Code. The county from which an inmate of an institution for the feeble-minded was committed shall be liable for such inmate's support, provided the same is not paid otherwise as provided by this act. The treasurer of each county shall pay to the treasurer of state, upon the warrant of the county auditor, the amount chargeable against

such county for the preceding six months for all inmates therefrom not otherwise supported, upon the presentation of the statement thereof. * * *''

As to the amount of payment for such support, Section 1815-2, General Code, then in force and effect read as follows:

''The maximum rate for the support of inmates of such institutions shall be five dollars and fifty cents per week. Less amounts may be accepted by the board when conditions warrant such action, or when offered by persons not liable.''

Under the provisions of Section 1815-2, General Code, the auditor of the State billed and the treasurer of the State received either from individuals otherwise liable for support or from the county the sum of $5.50 per week.

During the early thirties many of the counties, including Franklin County, fell substantially in arrears on such payments. In the meantime, the Sales Tax Act of Ohio had been enacted with provision for the creation of the local government fund from the proceeds of such tax and for distribution of such fund to local subdivisions. With many of the counties falling into arrears on their apparent obligation to the State, the General Assembly of Ohio enacted Section 5546-20a, General Code, effective June 24, 1937. This statute read in part as follows:

''The auditor of state shall not make distribution of the local government fund as provided in Sections 5546-1 to 5546-22, General Code, both inclusive, to any county which is indebted or otherwise obligated to the state until such indebtedness or other obligation has been duly paid and satisfied. Provided, however, that no distribution of the local government fund as set out herein shall be withheld unless and until an itemized statement of such indebtedness is furnished the county auditor of the county from which said indebtedness is due at least thirty days prior to the withholding of said distribution. * * * Any indebtedness or obligation of the state to a county shall be deducted from the amount owing to the state by such county in determining the indebtedness or obligation with respect to which distribution is withheld as herein provided. * * *''

In *State, ex rel. Carr* v. *Ferguson*, 133 Ohio St., 325, the board of county commissioners of Montgomery County sought a writ of mandamus against the state auditor to compel him to

pay Montgomery County its full distributive share of the proceeds of the sales tax without deducting the amount due the state from Montgomery County as required by Section 5546-28, General Code, on the assertion that this statute was unconstitutional for various reasons. The Supreme Court on March 9, 1938, rejected these arguments of unconstitutionality and refused to issue the writ of mandamus. In that case no claim was made that the amount stated to be due the state from Montgomery County was not correct. In the process of the opinion by Myers, J. at page 333 it is stated:

"* * * It is said by the relators that if the state has any claim against the county it may go into a court of competent jurisdiction and there secure judgment. The same argument applies to the claim of the relators. If the Auditor of State or other official makes an error the courts are open for a proper correction: * * *"

We perhaps should note at this point of our opinion that this language had reference to the power of a court to, in effect, compel the auditor of state to follow his statutory duty of deducting from the distribution of the local government fund only such amount as any county actually was "indebted or otherwise obligated to the state," and in our opinion does not support the broad assertion of counsel for the plaintiff that a court may make a general accounting of the respective obligations between the state and a county in cases where no local government fund moneys are being held by the auditor. In the instant case, of course, there is no claim that any such local government fund moneys are being withheld by the auditor.

Meanwhile, and before the *Carr case* reached a final decision the commissioners of Franklin County on August 3, 1937, began the *Shade case*, seeking to prevent the auditor of state from withholding sales tax revenue (the local government fund) alleged to be due to Franklin County. There as contrasted to the *Carr case* the plaintiff asserted, in addition to the constitutional arguments advanced in the *Carr case*, that the actual computation by the auditor of the alleged debt or obligation of Franklin County to the state was incorrect. Primarily, upon the basis of the above quoted language of Judge Myers in the *Carr case*, the late Judge Charles A. Leach of this court over-

ruled a demurrer to the petition. In this connection it is somewhat interesting to note that the quotation from Judge Myers' opinion, as quoted by Judge Leach at page 372 in 11 Ohio Opinions, contained not only the language quoted above but also, immediately thereafter, the statement:

"* * *. There is specific provision in other sections of the Code for such actions. The Common Pleas Court of Franklin County is designated as a tribunal for such purpose."

We assume that such language must have been contained in Judge Myers' opinion in the advance sheets since it is not now contained in the permanent volume in 133 Ohio St.

In a law and fact appeal thereafter, a similar demurrer was overruled by the Court of Appeals in the *Shade case*, 44 Ohio Law Abs., 332, the court holding that an action to compel the auditor of state "to perform a duty claimed to be required of him by statute" is not to be considered as an action against the state within the rule that suit may not be maintained against the state without its consent, but is an action against the individual.

At this point of our opinion at this point we should state that as we interpret this opinion of the Court of Appeals, it, in effect, was stating that since the auditor under the provisions of Section 5546-20a, General Code, was only authorized to deduct the *actual* indebtedness of the county, an action to enjoin him from deducting more than that sum, is not contrary to legislative *intent* (and thus in effect an action against the state), but is merely an action to compel obedience to legislative intent and thus, is an action against the individual. With that we are in agreement, but as heretofore noted Section 5546-20a (now Section 5739.24, Revised Code), has no possible application to this case since there is no allegation that the auditor is withholding moneys pursuant or allegedly pursuant to such statute.

After the demurrer to the petition was overruled by the Common Pleas Court in the *Shade case*, a special master commissioner was appointed. It was asserted before the commissioner that the state, under the provisions of Section 1815-2, General Code, was not entitled to charge at the rate of $5.50 per week, but was only entitled to charge at actual cost. There was a further dispute between the parties as to what would con-

stitute actual "cost," if such criteria be applied. The master commissioner in his report rejected the contention of the state that it was entitled, in any event, to receive $5.50 per week, and on one of the many possible mathematical computations of "cost" discussed in his report, he concluded that the state was entitled to charge at the rate of $3.30 per week for 1931, $2.94 for 1932, $2.73 for 1933, $3.04 for 1934, $3.14 for 1935, $3.23 for 1936, $3.61 for 1937, $3.79 for 1938, and $4.04 for 1939. However, even when such adjustment was made, he concluded that Franklin County owed the State of Ohio the sum of $454,530.41 for a period beginning, six years before the filing of the petition, that is, in 1930 and ending in December 31, 1939, and thus that the injunction prayed for to prevent a withholding of local government fund moneys should be denied.

Thereafter the report of the master commissioner was accepted by this court and an appeal on law and fact taken to the Court of Appeals. That appeal was pending at the time of the decision of the Supreme Court of Ohio in the case of *State, ex rel. Herbert* v. *Vermillion*, 145 Ohio St., 76, which now should be referred to.

On the basic dispute between the state and Franklin County at that time, not as to the exact method or manner of computing "cost," but as to whether the state was entitled to charge $5.50 per week in any event, the attorney general during the pendency of the *Shade case* began in this court the *Vermillion case*. This was an action under the so-called pay patient law for the recovery of money claimed to be due the state for the support of one Phillip L. Vermillion, while a patient in the Columbus State Hospital. The case was submitted to Judge Charles A. Leach without the intervention of a jury. He rejected the contention of the state that under the provisions of Section 1815-2, General Code, the charge should be $5.50 per week. He accepted not only the principle that the payment should be "cost," but also accepted the figures of the master commissioner in the *Shade case* for the years 1931 to 1939 in the amounts heretofore set forth.

This decision was appealed to the Court of Appeals on questions of law and the judgment of the trial court was affirmed.

The judgment was also affirmed by the Supreme Court which specifically held, as indicated in the syllabus, that under the provisions of Section 1815-2, General Code, the *maximum* rate for the support of inmates was $5.50 per week, but that under the Section, the rate charged for such support "may not exceed the cost thereof."

Thereafter, on September 10, 1946, an agreed entry was filed in the Court of Appeals in the *Shade case* dissolving an injunction theretofore granted against the state auditor as to distribution of the local government fund and further providing for the payment by Franklin County to the State of Ohio for the years 1930 ending December 31, 1939, the sum of $454,530.41 heretofore indicated, and an additional sum of $186,927.28 for the period from that time to and including December 31, 1942.

With this background let us now turn to a consideration of the particular claim of the parties herein.

Is this an action against the state brought without the consent of the state? If it is, no cause of action is stated in favor of the plaintiff.

Obviously, the mere fact that the state is not actually named as a party defendant is not dispositive of this issue. The state was not actually named as a party defendant in the *Palumbo case, supra,* or the *Glander case, supra,* and yet, these actions were held to be actions "against the state." In the *Glander case* certain excerpts from Ohio Jurisprudence, Corpus Juris and American Jurisprudence were quoted by Judge Turner at page 193 with approval. We quote:

"In 37 Ohio Jurisprudence, 268, Section 44, it is said:

" 'In accordance with the general rule that the state cannot be sued without its consent, suits against officers of the state, as representing the state in action and liability where the state, though not a party to the record, is the real party against which relief is sought and where a judgment for the plaintiff, though nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability, are treated as suits against the state.'

"In 59 Corpus Juris, 313, Secion 468, it is said:

" 'A suit, involving property in which the state has an undoubted right or interest, and in which no effective decree

can be rendered without binding the state itself, is a suit against the state and cannot be maintained without its consent. * * *'

"In 49 American Jurisprudence, 304, Section 92, it is said:

" 'While a suit against state officials is not necessarily a suit against the state, within the rule of immunity of the state from suit without its consent, that rule cannot be evaded by bringing an action nominally against a state officer or a state board, commission, or department in his or its official capacity when the real claim is against the state itself, and the state is the party vitally interested. If the rights of the state would be directly and adversely affected by the judgment or decree sought, the state is a necessary party defendant, and if it cannot be made a party, that is, if it has not consented to be sued, the suit is not maintainable. The state's immunity from suit without its consent is absolute and unqualified, and a constitutional provision securing it is not to be so construed as to place the state within the reach of the process of the court.' "

Unless we can find some statutory authorization of this procedure and thus construe this procedure as being brought in accordance with and not contrary to legislative intent, surely it must follow that the instant action would seek to "control the action of the state" to be "binding" on "the state itself" and certainly the "state is the party vitally interested."

Is this an action, as was the *Shade case*, to require a state official to obey legislative intent or is it an action to require him to take action contrary to legislative intent? We think it is the latter. In the first place as heretofore noted, Section 5546-20a, General Code (Section 5739.24, Revised Code), by its specific terms has no possible application to the facts herein involved. Secondly, we know of no other statute, and have been referred to none, which as a matter of legislative intent could be construed as authorizing this procedure, or construed as imposing a statutory requirement upon the defendants to refrain from collecting moneys otherwise due to the state from such county officials until the overpayment has been balanced off. In the third place and perhaps of even more importance, as illustrating that this action is contrary to and not in accordance with legislative intent, is the fact that the 97th General Assembly in 1947, subsequent to the termination of the

*Carr case,* the *Shade case* and the *Vermillion case,* appropriated the sum of $425,000.00 to be used for the purpose of effecting a *final* and *complete settlement* of all controversy between the state and the various counties growing out of charges made by the state to the various counties for the maintenance and care of patients committed to the state institutions for the feeble minded.

As alleged in the petition and admitted in the answer, Mahoning County in 1957, received from the state the sum of $22,057.42. Bearing in mind the provisions of Section 22, Article II of the Constitution, such money could have been paid to Mahoning County only in pursuance of a specific appropriation made by law. Obviously, therefore, this payment of $22,057.42 could only have been made out of the sum of $455,000.00 appropriated by the General Assembly in said H. B. No. 495.

But we assume that plaintiff would assert that even though this bill provided that such payment should be "a final and complete settlement" that Mahoning County did not accept it as such, that it is merely a partial payment and that the county is not bound unilaterally by such an act of the General Assembly. If this be the assertion of the plaintiff, we do not agree. In this connection it must be borne in mind that a county is but a *subdivision* of the *state* organized for judicial and political purposes under provision of the Ohio Constitution. 14 Ohio Jurisprudence 2d, 201. Basically, the powers and the functions of the county organization have a direct and exclusive reference to the general policy of the state and are in fact but a branch of the general administration of that policy. Board of County Commissioners of *Hamilton County* v. *Mighels,* 7 Ohio St., 110 at 119.

Despite the existence of general statutes giving counties certain powers to sue and be sued, it was held in *Commissioners of Lake County* v. *Commissioners of Ashtabula County,* 24 Ohio St., 393, that a suit could not be brought by one county against another except for a cause authorized by statute and that counties themselves being the creatures of the statute, all the rights and liabilities must originate from the same source.

In *Board of Commissioners of Champagne County* v. *Church,* 62 Ohio St., 318, it is stated at page 345 that counties are creatures of constitutional and legislative enactment, that

they have only such powers and privileges as are given them, and those powers and privileges may be modified or taken away.

Assuming but not deciding that prior to the action of the 97th General Assembly in the enactment of H. B. 495, upon the basis of some other statutory provisions not here called to our attention, that a county in effect would be authorized to sue the state on some general accounting principle, we think it clear that as a matter of *legislative intent* such powers, insofar as the present controversy is concerned, if they otherwise existed were by such legislation "taken away."

But, says the plaintiff in effect, regardless of any action on the part of the General Assembly, Mahoning County is entitled to this relief by virtue of the agreement with the then attorney general during the pendency of the *Shade case* that after determination of this litigation the state "would immediately thereafter adjust the claim of Mahoning County on the identical terms as those arrived at with Franklin County."

Passing for the moment the power and authority of the attorney general to thereby in effect consent on behalf of the state to a later action against the state, a more careful examination of the petition reveals that actually this action is predicated on the assertion that the "cost" of supporting inmates from 1931 to 1939 inclusive, did not exceed an average of $3.05 per week and from 1939 to 1942 did not exceed an average of $3.50 per week. It should be noted that the petition does not allege that an adjustment with Franklin County in the *Shade case* was made on *these terms*, but instead asserts merely that this was the "cost." When these figures are compared with the actual figures of adjustment with Franklin County as set forth, by way of reference in the opinion of Judge Leach in the *Vermillion case* in 29 Ohio Opinions, 219, it would seem that the omission to allege that the State of Ohio in effect owes Mahoning County the amount asserted on the basis of a computation between the amount actually paid and the amount adjusted in the *Shade case* is not an inadvertent omission.

Thus we have a situation where the petition as drawn, although making reference to the agreement with the attorney general, is predicating the computation of the alleged $35,797.98 on the basis of the difference between a general assertion of Mahoning County as to "cost" and the amount actually paid,

and is not predicating such claim on the computation of the difference between the amount actually paid and the amount determined in the *Shade case* as being a *proper* "cost."

In this connection it should also be noted that the petition alleges "that thereafter *from 1939 to 1948*, the State of Ohio and defendant officers failed, refused and neglected to perform the agreement entered into by the attorneys general as aforesaid." When it is remembered that the $425,000.00 appropriation of H. B. No. 495 of the 97th General Assembly was for the biennium beginning January 1, 1947, and ending December 31, 1948, and that Mahoning County received therefrom the sum of $22,057.42, the fact that the petition does *not* allege that the State of Ohio and the defendant officers have *never* made an adjustment for Mahoning County "on the identical terms as those arrived at with Franklin County," but instead alleges only that "from 1939 *to* 1948" they failed to perform the agreement, the omission in this respect also becomes important.

Even if we were to assume on the basis of the language actually employed in the petition (and in the opinion of this court such an assumption could not be made) that Mahoning County is seeking, in effect, to recover the difference between the moneys actually paid by them from 1931 to 1942 and the comparable amounts paid by Franklin County pursuant to the agreement in the *Shade case*, nevertheless we still would be of the opinion that this is an action brought against the state without the consent of the state. In our opinion, the power of the attorney general in the *Shade case* was limited to the authority, at best, to agree to a lesser withholding *from the local government fund*. In other words, if by any method of computation in the *Shade case* it had been determined that the State of Ohio was indebted to Franklin County (instead of the reverse as was actually determined), in our opinion the attorney general would have had no authority to agree to *payment* by the state to the county. Section 115.17, Revised Code (former Section 268, General Code), provides that the auditor of state shall keep an account of claims due the state reported to him by an officer or an agent of the state and provides for certification to the attorney general for collection. This statute further provides that the "attorney general and auditor of the state may adjust

any claim in such manner as is equitable.'' In this respect, note first, that such adjustment requires action by both the attorney general and the auditor. Note second, that this statute is limited to adjustment of claims *in favor of the state* but does not contain any provision authorizing them or either of them to recognize and effectuate payment of claims *against the state*.

While the decision in the case of *State, ex rel. Barber,* v. *Rhode*s, 165 Ohio St., 414, heretofore referred to, involved the matter of quashing service on state officers in a suit brought in Fulton County, we are in agreement with the statement of Judge Hart contained at page 421 therein, that ''The gist of this action, as relates to the defendant state officers, is the establishment of a *debt or claim against the State of Ohio* in favor of Fulton County for moneys claimed to have been overpaid to the state.'' This action, in our opinion, for reasons heretofore indicated, is not to compel state officers to *obey* a legislative mandate, but instead is to compel them to take action *contrary* to any existing legislation. Thus, in our opinion, this is an action ''against the state'' brought without authorization therefor, and, in our opinion therefore, the motion for judgment on the pleadings in favor of the defendants herein must be sustained for such reason.

In support of what appears to be an assertion that the attorney general, as the chief law officer of the state, has the inherent authority thereby to bind the state in this respect, plaintiff cites the case of *Prout* v. *Starr,* 188 U. S., 537. In our opinion, the *Prout case* does not support such a broad principle. Actually, all it held was that a successor attorney general of a state was bound by an agreement of his predecessor to accept the evidence taken in other cases in which the allegations of fact and the contentions of law were the same and to abide by decrees to be entered therein and consent to similar decrees in such pending cases.

As we have heretofore noted, but reiterate again, the *Shade case* did not involve a situation where Franklin County was seeking to obtain money from the state or from state officials, directly or indirectly, but instead involved a situation where it sought to prevent a state official from deducting from the moneys otherwise distributable under the local government fund, debts

or obligations owed by the county to the state in excess of those actually owed.

In *Ford Motor Co., v. Department of Treasury of Indiana*, 323 U. S., 459, it is stated at page 468:

"* * * Since the state legislature may waive state immunity only by general law, it is not to be presumed in the absence of clear language to the contrary, that they conferred on administrative or executive officers discretionary power to grant or withhold consent in individual cases. Nor do we think that any of the general or special powers conferred by statute on the Indiana attorney general to appear and defend actions brought against the state or its officials can be deemed to confer on that officer power to consent to suit against the state in courts when the state has not consented to be sued. * * *"

We turn now to the question of the statute of limitations. In the *Shade* case the master commissioner in his report applied the provisions of Section 11222, General Code (Section 2305.07, Revised Code), which read as follows:

"An action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

It is asserted by the defendants herein that this same statute of limitations is applicable to the instant case and that under its provisions this action is barred. As heretofore noted, a careful and literal reading of the language of the petition clearly indicates that recovery is sought herein computed on the difference between the amount paid by Mahoning County from 1931 to 1942 and the amount which it now asserts is the true "cost" of such support, and not on the basis of an assertion of a difference between the amount paid by Mahoning County and the yearly "cost" as ultimately determined in the *Shade* case. On this basis, in our opinion, the six-year statute of limitations clearly would apply.

Even if we were to assume (which assumption as heretofore noted is not supported by the literal language of the petition) that recovery herein is sought upon the basis of the *agreement* with the attorney general to adjust the claim of Mahoning County "on the identical terms as those arrived at

with Franklin County," nevertheless we still would be of the opinion that this action is now barred by the statute of limitations, even if a cause of action otherwise existed. The claim of the plaintiff is that the agreement of the attorney general being at least in part in writing, is a written contract which brings it within the scope of Section 2305.06, Revised Code, which provides that an action upon a specialty or an agreement, contract or promise in writing shall be brought within fifteen years after the cause thereof accrued.

For reasons heretofore discussed, we would conclude that the attorney general could not by any such agreement *create* liability, and thus, in our opinion, the written agreement with the attorney general would not fall within the scope or purview of a "promise in writing" under Section 2305.06, Revised Code. Instead, in our opinion, it would fall within the purview of a "written acknowledgment" within a purview of Section 2305.08, Revised Code, which in effect provides that an action may be brought thereon within the time otherwise limited by law after such acknowledgement or promise. If every *written* acknowledgement or promise to pay, which had its *foundation of basic liability* on some other premise is to be considered as a "promise in writing" within the purview of Section 2350.06, Revised Code, the requirement that such acknowledgement or promise be in writing as contained in Section 2305.08, Revised Code, would be meaningless. Thus assuming the power of the attorney general to make such a written acknowledgement or promise, the six-year requirement of Section 2305.07, Revised Code, would be extended beginning that date for another six years. That exact date of the written acknowledgement or agreement is not contained in the petition except in the sense that it is alleged that it was made during the pendency of the *Shade case*. The *Shade case* terminated in 1946 at which time the agreement became ripe for performance and even if that date be accepted as the date of the written promise or acknowledgement, the statute of limitations would have expired six years thereafter or in 1952.

For the reasons heretofore stated, the motion of the defendants for judgment in their favor on the pleadings is sustained. Entry may be prepared accordingly, reserving exceptions.