LEHEW, APPELLANT, *v.* RHODES, GOVERNOR, ET AL.,
APPELLEES.

(No. 9547—Decided January 13, 1970.)

*Mrs. Linda K. Champlin,* for appellant.
*Mr. Paul W. Brown,* attorney general, *Miss Winifred Dunton* and *Mr. Tom Martin,* for appellees.

TROOP, J. This appeal is from a judgment of the Court of Common Pleas of Franklin County, entered July 7, 1969, dismissing an action seeking a declaratory judgment following the sustaining of a motion for dismissal filed by the defendants.

The plaintiff in the trial court, Wells W. Lehew, Sr., is a recipient of benefits pursuant to provisions of R. C. Chapter 5106 providing "Aid to Disabled Persons." Mr. Lehew is the appellant herein. The defendants in the trial court, appellees here, are the Governor and the Director of Public Welfare of the state of Ohio. Plaintiff alleges in his petition that the state of Ohio makes a special dietary allowance to diabetics qualified to receive benefits under R. C. Chapter 5105 providing "Aid for the Aged." Mr. Lehew further alleges that he is a diabetic in need of special diet and that the $5 per month made available to diabetics under Regulation 461.2, Ohio Public Assistance Manual, is limited to those persons receiving "Aid for the Aged," and that such allowance has been specifically denied to him as one who receives "Aid to Disabled Persons."

An application was made to the Franklin County Welfare Department for the special dietary allowance, alleges Mr. Lehew. The allowance was denied and an appeal taken to the Director of Public Welfare as provided by statute (R. C. 5106.06), and, after a fair hearing, the order of the Franklin County department was affirmed and the allowance again denied. Plaintiff says that he has no further administrative relief, or appeal, available. Not having any further administrative or appeal procedures available to him, and believing that he is being discriminated against arbitrarily, which discrimination seriously affects his health and denies him equal protection of his rights, under both the federal and state Constitutions, he filed his action in the Common Pleas Court.

Further, plaintiff alleges that he has met every requirement for receipt of the special dietary allowance under Regulation 461.2 except that he is a recipient of aid for the disabled and not that as provided for aid for the aged.

The prayer contained in plaintiff's petition is as follows:

"Wherefore, plaintiff prays for a declaratory judgment declaring his right to receive an allowance for a special diet pursuant to the Ohio Public Assistance Manual regulation 461.2. Plaintiff further prays that the defendant be ordered to provide to the plaintiff the special allowance to which he is entitled and has been entitled since first requested."

Counsel for the appellant correctly argues that the prayer of a petition does not restrict the possibilities of proper recovery predicated on the allegation contained in the body of the pleading. The prayer in this instance provides an emphasis that serves as a starting point in this discussion and opens the way for a review of the questions incident to that emphasis as well as those suggested by the decision of the trial court.

Ohio has had a declaratory judgments statute for many years and, effective in 1933, enacted such a law to accomplish uniformity with other states in its Declaratory Judgments Act. (115 Ohio Laws 495.) Effective October 6, 1961, the law was amended to its present form. The essential portion of R. C. 2721.03 reads as follows:

"*Any person* interested under a deed, will, written contract, or other writing constituting a contract, or *whose rights, status, or other legal relations are affected by a constitutional provision,* statute, rule as defined in Section 119.01 of the Revised Code, * * *, may have determined any question of construction or validity arising under such * * *, constitutional provision, statute, rule, * * * and obtain a declaration of rights, status, or other legal relations thereunder." (Emphasis added.)

The added italics indicate the basis upon which Wells W. Lehew, Sr., predicated his action for a declaratory

judgment in the Common Pleas Court, the determination of which gave rise to this appeal. Text writers do not discuss the italicized phrase of the section, which seems to indicate an absence of the phrase from the laws in other "uniform" jurisdictions. A cursory examination of 9A Uniform Laws Annotated supports such conclusion. New York and Pennsylvania have laws quite similar to Ohio absent the language added by the Legislature in 1961.

There are no decisions from Ohio courts that squarely explain what "rights, status, or other legal relations," affected by a constitutional provision, may be determined as to a question of "construction or validity" arising under that constitutional provision, and that further resolve the question of "rights, status, or other legal relations thereunder" for the "any person interested" who seeks an answer. Decisions from other jurisdictions help some, but many of them are not squarely in point.

To resolve the question presented on this appeal is difficult since the appellant seeks to have determined directly what is best described as his "status," primarily under Ohio statutes, and secondarily under a departmental regulation. Incidentally, he challenges the constitutionality of the departmental rule, and perhaps the authorizing statutes, as to their application to him alone. Petitioner, Lehew, seeks construction of a rule, not one as defined in R. C. 119.01, not construction of the Ohio or federal Constitution as to him, but as to the rule which he urges is unconstitutional under both.

"Status" seems to be the applicable term because it means "standing" or "condition" and as it relates to a claim. (40 Words & Phrases 128.) The term suggests broadly the legal standing of an individual as a part of his community, the state of his domicile. R. C. 2721.13 admonishes that the declaratory judgments chapter be "liberally construed," and R. C. 2721.14 suggests interpretation to effectuate the general purpose of the Act to accomplish uniformity with other states, and to harmonize our law with the federal law. This review, therefore, hopes to avoid fine distinctions and to examine broad principles.

As a general outline the discussion will follow the order suggested by appellant's assignments of error, the first of which is addressed to the finding of the trial court that the petitioner's action is in violation of the sovereign immunity rule as followed in Ohio.

The basic sovereign immunity rule is of long standing in Ohio. *Raudabaugh* v. *State* (1917), 96 Ohio St. 513, holds that Section 16, Article I of the Ohio Constitution, providing that suits may be brought against the state "as may be provided by law," is not self-executing. Without specific statutory provision, the rule is as follows:

"1. A state is not subject to suit in its own courts without its express consent."

*Raudabaugh* was a negligence action for damages accruing from the flooding of the lands of the plaintiffs by water from a state constructed reservior.

*Palumbo* v. *Industrial Commission* (1942), 140 Ohio St. 54, approved and followed *Raduabaugh*. The court held that the state, its agencies or officers were not obliged to respond to a garnishment order concerning the wages of a state employee, in the absence of legislation permitting it. Sovereign immunity, as applied in *Palumbo*, protected the funds of a state employee rather than the funds of the state, which is a rather unusual use for the doctrine.

A variety of fact patterns appears in the various Ohio decisions giving some consideration to the sovereign immunity doctrine. Exhaustive review is unnecessary. Illustrative cases will serve the purpose. Petitioners in *Ley* v. *Kirtley* (1907), 5 N. P. (N. S.) 529, asked for a mandatory injunction to require the Board of Public Works to lower the water level in a state canal. The court held:

"1. An action can not be maintained against the state of Ohio without its consent where the relief asked will operate upon the state, or the state is the real party in interest although not named in the title."

A slightly more elaborate holding came in *McBroom* v. *Watkins* (1911), 11 N. P. (N. S.) 337, an attempt to secure a mandatory injunction to enforce a contract, to which the state was a party, to maintain a certain water level in a public stream. The court spoke as follows:

"A private individual, as such, can not maintain injunction proceedings against, or interfere with, an officer or officers of the state in the performance of his duty, unless it can be shown that such officer acted in bad faith or from corrupt and malicious motives."

Sovereign immunity was applied in *State, ex rel. Williams*, v. *Glander, Tax Commr.* (1947), 148 Ohio St. 188, an attempt to secure an order to compel the Tax Commissioner to tax property belonging to the Department of Liquor Control, and, again, the doctrine was asserted in *State, ex rel. Board of County Commrs. of Mahoning County*, v. *Rhodes, Aud.* (1960), 86 Ohio Law Abs. 390, when petitioners asked that the state officers be restrained from collecting moneys due the state from the counties.

An entirely new turn came in *State, ex rel. Clark*, v. *Department of Mental Hygiene and Correction* (1955), 72 Ohio Law Abs. 340. This time the action was in mandamus and the order sought was to require the department to return the relator from the Ohio Penitentiary to the Mansfield Reformatory. There are many of a variety of negligence actions, typical of which is *Wolf* v. *Ohio State University Hospital* (1959), 170 Ohio St. 49, in which the court held that the hospital was an instrumentality of the state and not suable in tort.

In a more recent case, *West Park Shopping Center* v. *Masheter, Dir. of Hwys.* (1966), 6 Ohio St. 2d 142, involving an action to quiet title to real estate, the Supreme Court reiterated the sovereign immunity doctrine in paragraph one of the syllabus. Specifically, at page 146, the court speaks as follows:

"The Uniform Declaratory Judgments Act does not affect the doctrine of sovereign immunity. * * *"

The proposition is of more than ordinary interest since the decision is after the 1961 amendment to our declaratory judgments statute. The court, aware of the amendment, relies upon authorities both published before 1961 (Borchards, Declaratory Judgments, 2. Ed. 374, and 62 Harvard L. Rev. 787, 821 to 825), which strongly infers that the amendment added nothing of substance to the uniform law as it appeared before amendment.

It appears that the doctrine of sovereign immunity is still respected and applied by the courts of Ohio. Counsel for the appellant agrees that it is the law of Ohio but urges that it is not applicable in the instant case and offers in support of that contention a decision in an Ohio case and a federal case. *American Life & Accident Ins. Co. of Kentucky* v. *Jones, Admr. of Bureau of Unemployment Compensation* (1949), 152 Ohio St. 287. The case arose before 1961, and, as the court says, "* * * the instant action is to declare and determine the rights and status of insurance company under the Unemployment Compensation Act." (Page 298.) Conscious of the prevailing sovereign immunity rule, the court continued, and carefully distinguished the case before it from *Palumbo, supra,* in which the court had invoked the doctrine, saying that in *Palumbo* "there was an attempt to reach money which was a part of the general fund of the state," whereas in the case before the court "as an incident" of the declaration sought by the insurance company "funds which belonged to the insurance company" were involved.

The basic fact pattern in *American Life,* the care exercised by the majority of the court to distinguish its holding from the rule in *Palumbo,* the vigorous dissent of Judge Taft, to say nothing of the recent position taken by the court in *West Park Shopping Center* v. *Masheter, Dir. of Hwys.* (1966), 6 Ohio St. 2d 142, provide necessary background for the syllabus rule (from *Amrican Life*), upon which appellant relies, as follows:

"4. An action against the administrator of a state bureau for a declaratory judgment pronouncing the rights, status or other legal relations of the plaintiff with reference to a statute is not an action against the state, even though other incidental relief is granted."

Paragraph two of the syllabus should be noted also. It flatly says that a declaratory judgment is not available to circumvent an adverse decision of an administrative agency, and continues with a pronouncement of the basic long-standing rules respecting the fundamentals in the use of the declaratory process, as follows:

"* * * an action for a declaratory judgment may be

entertained by a court in the exercise of its sound discretion, where the action is within the spirit of the declaratory judgments act, a real justiciable controversy exists between adverse parties, and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost. * * *''

Appellant relies upon a federal case, *Ex Parte Young* (1908), 209 U. S. 123, in support of his claim that the sovereign immunity rule does not free a state from answering for its unconstitutional acts. A state railroad rate statute was involved in *Young,* the claim being that the rates imposed were excecessive. The language of the court is significant, as follows:

''The attempt of a state officer to enforce an unconstitutional statute is a proceeding without authority of, and does not affect, the State in its sovereign or governmental capacity, * * *.''

Clearly that decision has no bearing on an action which moves directly toward the use or distribution of state funds.

Plaintiff, Lehew, seeks an order declaring his right ''to receive an allowance'' and that the director ''be ordered to provide'' the special allowance to which he is entitled. Such a declaratory judgment has the final effect of a judgment against the state of Ohio. No decision of any court has been cited by counsel, nor has any been discovered in the course of this review, which holds that a money judgment, or many other kinds of final orders, may be obtained against the state without its consent. There is some indication in the area of declaratory judgments which portend liberality in the rules, but the present state of the law is well put by a proposition from 59 A. L. R. 2d 937, cited by appellant, as follows:

''* * * certain incidents of sovereignty remain to the states, often exercised concurrently with the federal government, and among these is a general immunity from judicial process.''

The trial court did not err in applying the sovereign immunity doctrine in the instant case.

Appellant's second assignment of error urges that the

trial court erroneously held that the court lacked jurisdiction under R. C. 2721.02 and 2721.03 to declare appellant's constitutional rights regarding the special diet allowance provided in Section 461.2 of the Ohio Public Assistance Manual. Quite briefly the trial court put it, "Section 461.2 of the Ohio Public Assistance Manual is not a rule or regulation as defined in Section 119.01, Revised Code." Counsel for appellant appears to agree that the department regulation is not a rule under R. C. 119.01, but challenges the conclusion by the court that, therefore, it is without jurisdiction, urging contra that jurisdiction persists notwithstanding, by virtue of the broad language employed in R. C. 2721.02 through 2721.06, especially emphasizing that there is no limit on the exercise of the powers contained in the sections "in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." (R. C. 2721.-06.)

The support offered for appellant's position is the decision in *Coshocton Real Estate Co.* v. *Smith* (1946), 147 Ohio St. 45, a case decided before the 1961 amendment, which involved rights under a written lease. No more conventional and entirely proper fact pattern could be found for the use of the declaratory judgment procedure. The court held that jurisdiction is specifically conferred upon the court "to declare rights, status, and other legal relations." Then follows the statement—"This is precisely the relief asked by the plaintiff." (Page 48.) There can be no dispute about the jurisdiction to declare rights or status under a written lease. With such a fact pattern the additional phrase, "irrespective of whether further relief is or could be claimed," contributes but little to the solution of our much more exacting problem.

The regulation in question is not a rule under R. C. 119.01, nor is the Department of Welfare an agency under the section, nor has it been made subject to the Administrative Procedure Act by any other act of the Legislature. Mr. Lehew is limited, therefore, to an appeal made possible, and required, by statute under a departmental rule.

There is no further administrative relief available and no judicial help unless it be provided by the use of such a process as a mandatory injunction, or some extraordinary action such as mandamus, or, possibly, under the declaratory judgment chapter as presently urged by counsel.

Finally we examine the broader concepts of jurisdiction under declaratory judgments statutes, including therewith consideration of appellant's assignment of error number three and the trial court's finding of no denial of equal protection to this appellant.

In exploring the broad question of jurisdiction, under state declaratory judgment acts, the equal protection requirement imposed by state and federal Constitutions gets considerable attention, as does the compelling force of the entire Fourteenth Amendment to the federal Constitution, a factor limiting and restricting state legislation. A wide variety of cases was noted, suggested by counsel and otherwise. Constitutional sanction has been imposed frequently by the federal courts under the Fourteenth Amendment requirements of due process and equal protection. As counsel for appellant urges many decisions move into the area of health and welfare programs and the administration thereof.

State residence requirements necessary to the receipt of welfare benefits have been held unconstitutional by the federal courts as to Delaware, *Green* v. *Department of Public Welfare of State of Delaware* (1967), 270 F. Supp. 173, and Pennsylvania, *Smith* v. *Reynolds et al., Philadelphia County Board of Assistance* (1968), 277 F. Supp. 65. The pronouncement of the court (paragraph three of the headnotes) in *Green* is worthy of note in passing. It reads as follows:

"The equal protection clause of the Fourteenth Amendment does not preclude all state discrimination but only invidious discrimination."

The court held a one-year residence requirement as a prerequisite to public assistance an "invidious" discrimination, the only kind of discrimination precluded by the Fourteenth Amendment. Could then the denial of a $5 per

month diet allowance to a person already qualified for aid be classified as "invidious"?

The Supreme Court of Iowa held a statute of its own state unconstitutional, which established maximum grants of aid for dependant children and did not fix maximums for other forms of aid. (*Collins* v. *State Board of Social Welfare* [1957], 248 Iowa 369, 81 N. W. 2d 4.) The action began as one for a declaratory judgment to have the court declare the Iowa statute unconstitutional. No incidental relief was sought.

A federal court decision in *Lampton* v. *Bonin, Commissioner of Public Welfare of Louisiana* (1969), 299 F. Supp. 336, should be noted along with the Iowa decision. A Louisana statute reduced the aid to dependent children grants, but did not reduce the benefits for other welfare groups. In response to a petition for a declaratory judgment, the court decided that there was no violation of equal protection.

Counsel for appellant, in spite of the conclusion reached by the court in *Lampton,* quotes "several observations" made by the court, and those observations become the predicate for an ingenious argument that there are but two categories of public assistance, one composed of the three adult programs, and the other, the program for dependent children. That being true, says counsel, Mr. Lehew is in the same group with the recipients of old age benefits, and to deny him the diet allowance is discrimination between persons within the same class.

The "observations" of the court are essentially *dictum.* Even assigning them greater weight, the court, in appellant's quote (page 341), makes it plain that Congress authorized the states, "at their option," "to have a single plan" for the aged, blind, and disabled, leaving aid to dependent children independent thereof. There is nothing before this court to indicate that Ohio has elected to exercise that option. Four distinct divisions for public assistance are provided in four separate chapters of the Ohio Revised Code—Chapter 5105, Aid for the Aged; Chapter

5106, Aid to Disabled Persons; Chapter 5107, Aid to Dependent Children; and Chapter 5109, Commission for the Blind. Ohio welfare assistance has four classes, not two.

The "substitute father" regulation enacted by the state of Alabama received attention in *King, Commissioner, Department of Pensions and Security*, v. *Smith* (1968), 392 U. S. 309. A class action for a declaratory judgment and injunctive relief started the proceeding. The regulation was held to be unconstitutional. No incidental relief was granted. None was in fact necessary; the recipients of aid to dependent children were already qualified to receive it without further order or restraint of administrative officers.

A case in which the court moves directly to nullify the decision of an administrative board deserves mention. In *Sherbert* v. *Verner et al., Members of South Carolina Employment Security Commission* (1963), 374 U. S. 398, the court held that the South Carolina Employment Security Commission could not deny unemployment benefits to a member of the Seventh Day Adventist Church who refused to work on Saturday. The court said that no state interest was so compelling as to justify infringement on the claimant's rights under the First Amendment to the federal Constitution. The First Amendment was made applicable to the state by way of the Fourteenth Amendment.

Criminal cases in which the Supreme Court has held that the conviction process involved a denial of due process are familiar. Note *Douglas* v. *California* (1963), 372 U. S. 353, emphasizing discrimination between rich and poor in the denial of counsel for an indigent on appeal; *Griffin* v. *Illinois* (1956), 351 U. S. 12, which requires that a bill of exceptions be furnished a convicted indigent as a basis for his appeal; and *McLaughlin* v. *Florida* (1964), 379 U. S. 184, in which the court invoked equal protection for those convicted under a Florida criminal statute prohibiting cohabitation by unmarried interracial couples. That group of cases is peculiarly significant because of the clear right of the person involved to raise the question

of constitutionality. The position of each would be changed if the questioned procedure or statute were found to be unconstitutional.

The foregoing cases, for the most part, moved to nullify state statutes by declaring the law unconstitutional and without providing any incidental relief. Most of the decisions resulted from conventional procedures and, in exceptional instances, as a result of an action for a declaratory judgment, as in *Collins, Lampton,* and *King, supra.*

In an attempt to resolve the question of the propriety of using the declaratory judgment process to determine constitutionality, resort was to a brief review of comparable statutes in New York and Pennsylvania. Both states appear to have the uniform law without our 1961 amendment to R. C. 2721.03. The annotations, decision notes, under New York Section 3001, 9A Uniform Laws Annotated, indicate that declaration of unconstitutionality is proper even in states having no such provision as appears in our statute by way of amendment. Many subjects reflected in statutory enactment were tested, such as transit authority, tax assessments, jural relations of administrative officers, rental controls, composition of a county board, liquor laws, licensing of attorneys, consolidation of school districts, and regulation of dancing in beer joints. Constitutionality alone was determined.

Before attempting a summary, two cases upon which appellant relies are noted. They are *Shapiro* v. *Thompson* (1969), 394 U. S. 618, in which the United States Supreme Court held a District of Columbia one-year residency requirement as precedent to public assistance unconstitutional, and a New York District Court case, *Rothstein* v. *Wyman* (1969), 303 F. Supp. 339, which granted a temporary injunction against the New York Department of Welfare, keeping it from enforcing a law which would result in lower public assistance in county areas than would be paid to recipients in New York City.

*Shapiro* was limited to a decision on the constitutionality of the restrictive statute. At this point only a temporary order has been issued in *Rothstein,* and, even though

the court "indicated" that a valid equal protection claim had been made, it has not yet so decided. Assume that it does so decide, it must be on the basis of its own test (page 345 of 303 F. Supp.) :

"* * * a legislative discrimination which is purely arbitrary and draws invidious, irrational distinctions cannot withstand a Fourteenth Amendment attack. * * *"

The primary relief sought by Wells W. Lehew, Sr., in his action before the trial court, is the declaration of his right to receive a special allowance from public assistance funds and an order directed to "the defendant" to provide that special allowance to which he is allegedly entitled. Quite incidentally, plaintiff alleges that "he is being discriminated against arbitrarily" in violation of his constitutional rights, federal and state. At no time does plaintiff purport to represent a class. The allegations in his petition are as to him individually. There is no indication that a class suit is intended. The only statement hinting that there is in fact, in this case, possible discrimination as to a substantial group is found in appellant's brief, the assertion that he is a part of a class of persons, numbering approximately 22,000, jobless, dependent upon the state, and without effective means of protecting "his" rights.

The real purpose of plaintiff's action being to secure a $5 per month allowance, it invokes the doctrine of sovereign immunity. Ohio courts have consistently respected and applied the doctrine in cases similar to this one, and in a variety of other fact situations, from *Raudabaugh* to *West Park Shopping Center,* with such regularity, and with such emphatic approval, as to require continued recognition by courts of review. The only federal case cited, *Ex Parte Young, supra,* falls far short of saying that the sovereign immunity doctrine, as applied in the instant case, is unconstitutional. Barring a United States Supreme Court decision squarely in point, the Ohio rule must prevail.

Appeal under the Administrative Procedure Act is not available to this appellant. Appeal under *departmental* rule was available to, and was used by, Mr. Lehew prior to

his action filed in the Common Pleas Court. R. C. 5105.11 authorizes such appeal rule-making and requires that the procedures prescribed meet the conditions of "section 2 (a) (4) of title I of 'The Social Security Act.' " Rule-making for the administration "of aid to the permanently and totally disabled" is authorized in R. C. 5106.08, and resort to the department for the adoption of a new rule providing a possible dietary allowance to the recipients of assistance under this chapter is still available to this plaintiff.

Ohio maintains four separate statutory classifications for purposes of public assistance as provided in the four chapters previously noted. This plaintiff's action centers upon a miniscule administrative rule, wrongfully excluding him, and avoids consideration of the basic four-way classification as it may affect a "disadvantaged minority" (*Shapiro, supra*), wrongfully excluded. Since only two classes of recipients are discussed herein, only two chapters are noted, Chapters 5105 and 5106. There is similarity between the two. Both provide for "reasonable subsistence compatible with his health and well being." One chapter covers permanently and totally disabled persons 18 to 65 years of age. Aid for the aged is for those 65 and over. Appellant inferentially argues that the rigid age limit of 65 ought not be applicable to a diabetic 64 years of age. Classifications with arbitrary age limits are common, and it must be so, age being a fundamental factor in many areas. To be close to the line cannot be regarded ground for varying a rule. A minor 20 years, 11 months, and 15 days old is a minor until he is 21.

The total qualifications for eligibility, determination of the amount of aid payable, and eligibility for extras, such as medical and dental care, special care, drugs, and many others, are factors in determining benefit payments. It must be noted also that a grant of aid for the aged to one over 65 creates a preferred claim against his estate in the amount of the advances, while the recipient of aid for the disabled is not confronted with such requirement.

Examination of the classification structure precludes

the conclusion that there is an "invidious discrimination" as to disadvantaged minorities under Ohio law.

It is not completely established that receipt of welfare benefits constitutes a constitutional right. (*Rothstein, supra.*) Assuming there exists such right, there still remains a question whether the right may be established by the declaratory judgments process. Some states, as those noted *ante,* hold that under the Uniform Declaratory Judgments Act, comparable to Ohio's before amendment, constitutionality, at least of statutes, may be determined. Ohio courts have not as yet so held, except as *American Life, supra,* may bear upon the question.

Plaintiff sought primarily a judgment against the state of Ohio for a money allowance. This he may not do under Ohio law.

Assume an "actual controversy" and a "justiciable interest," it is difficult to see how an order of the trial court would "finally" determine the status or right of the plaintiff under Section 461.2, Ohio Public Assistance Manual, when his circumstance will admittedly change when he reaches 65.

If we assume the declaratory judgments process proper, all that might be done is to declare the regulation unconstitutional. The decisions reviewed do not encourage the idea that the declaratory process can do anything more. Certainly there is little support for the notion that a court has jurisdiction to change the status of a qualified recipient of public assistance to accomplish an increase in his allowance. In this case, to hold the regulation plaintiff seeks to have made applicable to him unconstitutional, leaving him in exactly the same position he now occupies, is a completely futile and vain exercise.

Notwithstanding the encouragement that might come from *Sherbert, supra,* to engage in examination of the detailed workings of state administrative agencies, it is an exercise that may provide courts with the relentless, inexorable, and interminable chore of deciding the claims of many beneficiaries under all of the public assistance programs. Decisions as to "disadvantaged minorities" claim-

ing "invidious discrimination" are one thing; determining eligibility for, and amount of, benefits to which an individual is entitled is still another.

Admitting the possible bias of the court in *Rothstein, supra,* and taking some generalizations made by the court out of context, we note the following general propositions:

"* * * in the interest of maintaining a proper balance between state and federal authorities the Equal Protection Clause should not be used to interfere with the state legislative process."

"The need or appropriateness of legislation is to be determined by the legislature, not the courts, and the latter should not substitute their economic or social beliefs for those of the former."

No rule is so firmly established as that which holds that courts shall not legislate. It should be equally well settled that courts shall not assume the administrative function of government. Heaven help the judicial system which undertakes to manage the public assistance programs of the state and federal governments.

Appellant's assignments of error are not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HOLMES and STERN, JJ., concur.