MORGAN, APPELLANT, *v.* CANARY ET AL., APPELLEES.

[Cite as Morgan v. Canary (1975), 44 Ohio App. 2d 29.]

(No. 74AP-441—Decided February 27, 1975.)

*Messrs. Thompson, Swope, Burns & Biswas,* for appellant.

*Mr. William J. Brown,* Attorney General, *Mr. James P. Carpenter* and *Mr. Steven L. Ball,* for appellees.

HOLMES, J. This matter involves the appeal of a judgment dismissing the cause of action brought by the plaintiff, on the basis that the court lacked jurisdiction over the subject matter because of the historical doctrine of sovereign immunity. The facts giving rise to the action in the trial court, and of this appeal are as follows. The plaintiff, Jean Morgan, is the owner and operator of a nursing home in Uniontown, Ohio, licensed by the Ohio Department of Health. The plaintiff, having been certified by the Department of Public Welfare, entered into a contract with that department, whereby the plaintiff agreed to provide care for patients who were recipients of welfare under the medical assistance program, commonly known as the vendor payment program. The amount of money received

by an operator of a nursing home under the plan depends upon the classification given to the operation's facilities, the certification of the facility by the Department of Public Welfare, and the care required by the patient as determined by the department.

In August 1971, the director of the Department of Health proposed to revoke the plaintiff's license to operate a nursing home on the basis of some unaccomplished improvements to the facilities that the department deemed necessary. There was a hearing on the matter, but, prior to a formal decision thereon, the revocation action was dismissed. Subsequently, the director of the Department of Welfare notified the plaintiff that plaintiff's nursing home would be decertified unless certain alleged deficiencies were corrected. Such notification indicated that the plaintiff had a right to a hearing within 15 days, but not before the effective date of the decertification. Fifteen days after the notice was given the plaintiff's nursing home was decertified, thereby reducing the rates and income received by the plaintiff. Subsequent to decertification, a hearing was afforded the plaintiff. The plaintiff claims that the director presented no evidence at such hearing to support such decertification.

The plaintiff appealed to the Court of Common Pleas of Franklin County, seeking a declaratory judgment as to the rights that are claimed to have been due her, including that of a due process hearing prior to decertification and reclassification, and a declaration as to whether or not such decertification was in accordance with R. C. Chapter 119, which is the Administrative Procedure Act. She also sought mandatory injunctive relief by way of an order that the director of the Department of Welfare pay to the plaintiff the sum which was claimed to be due her, based upon the prior classification of her nursing home as certified.

The Court of Common Pleas by a decision and entry dated July 11, 1973, sustained a motion of the defendants to dismiss the action as to damages, on the basis of sovereign immunity, but overruled the motion to dismiss

the action insofar as it pertained to the declaratory relief sought. The action was then appealed to this court and we remanded such matter to the trial court because the trial court had not, in granting judgment for less than all of the claims presented, specifically determined that there was no just reason for delay, pursuant to Civil Rule 54(B). Upon remand, the Court of Common Pleas entered a further order, dated September 16, 1974, incorporating its prior "decision and entry" of July 11, 1973, and including the magic wording of Civil Rule 54(B), alluded to above. The trial court then entered a final judgment for the de-. fendants.

The plaintiff again appealed to this court, setting forth the following assignments of error:

"1. The trial court erred in sustaining the motion to dismiss because failure to allow mandamus or mandatory injunction to compel payment for a property right taken by the state violates Article I, Section 19 of the Ohio Constitution.

"2. The trial court erred in sustaining the motion to dismiss because the doctrine of sovereign immunity violates the 5th and 14th Amendments to the Constitution of the United States.

"3. The trial court erred in sustaining the motion to dismiss because mandamus and mandatory injunction is the proper remedy to enforce a duty created under a contract entered into by virtue of legislation which requires payment upon performance.

"4. The trial court erred in dismissing the case when there are still existing issues which are not resolved by the assertion of sovereign immunity."

Even though the Complaint herein names the director of the Ohio Department of Public Welfare, and the director of the Stark County Department of Welfare, as the parties defendant, we must recognize that they have been named as defendants in their official capacities. Further, we believe that it cannot be seriously disputed that as such these defendants are nominal parties only, and that the state of Ohio is the real party in interest.

Suits against state officials in their official capacities in essence are suits against the sovereign. *State, ex rel. Williams,* v. *Glander* (1947), 148 Ohio St. 188; *State, ex rel. Wilson,* v. *Preston* (1962), 173 Ohio St. 203.

Prior to January 1, 1975, the law in Ohio was clear that the state could not be sued for monetary relief without its consent. The much maligned "non-self-executing" portion of the Ohio Constitution in this regard is Article I, Section 16, which provides: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

There has been a long line of cases here, as well as elsewhere, to the effect that a state's position in holding itself immune from legal redress, on the ancient theory that "the king can do no wrong," is not violative of the Fifth and Fourteenth Amendments to the United States Constitution. *Krause* v. *State* (1972), 31 Ohio St. 2d 132, is one of the most recent cases within this state upholding this historical immunity doctrine. This court recently discussed the subject in the case of *Lehew* v. *Rhodes* (1970), 23 Ohio App. 2d 102.

There have been many differing types of claims presented which have given our courts the opportunity to render variations of the theme of state immunity. There have been actions sounding in tort, actions for the enforcement of claimed rights to welfare payments, claims for compensation benefits of a various nature, and claims for labor and materials expended on behalf of the state with, as well as without, contract. In such cases, the courts have generally harmonized upon the familiar theme.

However, there has been a variation in the theme in the area of contracts entered into by individuals and the state. In this regard, this court, speaking through Judge Whiteside, stated in the unreported case of *Gustav Hirsch Organizaion, Inc.,* v. *Ohio State University,* No. 74AP-275, decided December 17, 1974, as follows:

"The parties have cited, and this court has found, no Ohio case in which the doctrine of sovereign immunity has successfully been interposed by the state to avoid paying

an amount lawfully due under a contract with the state. On the other hand, there are no cases expressly holding that the doctrine of sovereign immunity does not apply in that situation. In this regard, a distinction must be made between an action for the recovery of an amount lawfully due under a contract and an action for consequential damages for breach of contract. In the former instance, there is a lawful duty to pay the amount due, if the funds are available; whereas, in the latter, there is no such duty imposed by law, and, ordinarily, funds would not have been appropriated therefor. * * *''

This court, in *Gustav Hirsch*, then proceeded to hold that mandamus was an appropriate remedy to compel payment of the amount lawfully due under a contract with the state. Citing, among other cases, *State, ex rel. The Horvitz Co.*, v. *Sours* (1945), 145 Ohio St. 293, and *State, ex rel. S. Monroe & Son Co.*, v. *Tracy* (1935), 129 Ohio St. 550.

We further noted in *Gustav Hirsch* the agonizing process through which this court, and other courts, have moved in following the basic mandate of governmental immunity, but yet attempting to recognize basic individual contractual rights. We pointed out that this court, in *Karr Construction Co.* v. *Department of Natural Resources*, No. 9579, decided February 10, 1970, concluded that an action predicated on the claim of breach of contract on the part of the state, relative to the performance of certain work pursuant to that contract, could not be maintained because of sovereign immunity.

However, in *Karr*, we stated: ''There is no question that the contract involved herein is a valid contract, and as such is binding upon the state of Ohio. The state within an appropriate proceeding may be held to comply with the terms of its contract.'' As to the availability of the action of mandamus, we stated in *Gustav Hirsch* that such an action as an appropriate remedy to compel payment, by the state officers involved, of the amount due under a contract ''necessarily presupposes that there is no other adequate remedy at law * * *.'' On the basis of our con-

clusions in *Karr*, we then proceeded to hold in *Gustav Hirsch* that there could be no direct action on the contract, and that the only available remedy was in mandamus "where there is a clear legal duty to make the payment claimed, and the funds therefor are available." Such legal conclusions, however legally valid, presented a tedious and cumbersome route to follow in order to obtain what might be rightfully due.

Now dawneth the day of light when the legislative body of the state declared that the king may, in a given instance, be found to have done wrong. By way of the enactment of Am. Sub. H. B. 800, the state of Ohio has for most intents and purposes waived its governmental immunity. Such act creates a new court in Ohio called the Court of Claims. The act provides for the demise of the Sundry Claims Board.

R. C. Chapter 2743 provides for the court's judges, officers, jurisdiction, and procedures. This new law specifically provides that the immunity of the subdivisions of the state is not being waived by such act. Further, the new act states that the rules of law applicable in civil actions shall be applied to suits filed in the new Court of Claims. The new language which heralds a new day in the state's accountability at law for its actions is to be found in R. C. 2743.02, which is as follows:

"(A) The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, subject to the limitations set forth in this chapter. To the extent that the state has previously consented to be sued, this chapter has no applicability."

The creation of the new court, as well as its jurisdiction, is provided for by R. C. 2743.03(A), where we find the following:

"(A) There is hereby created a court of claims. The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state

permitted by the waiver of immunity contained in section 2743.02 of the Revised Code, and exclusive jurisdiction of the claims of all parties in actions which are removed to the court of claims and determinations pursuant to sections 5315.04 and 5315.05 of the Revised Code. The court shall have full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, cross-claims, and third-party claims.''

As is found to be necessary in most instances of new enactments, there will be a period of establishing interpretive case law relative to the jurisdiction, powers and functions of this new court. Also, in such instances, history tells us there will be a certain amount of judicial interpretation, during the evolution of the state's throwing off of its protective cloak.

Specifically relating to this case, we are safe in saying at this time that the law has now provided a general forum in which to institute most claims against the state. Such claims may necessarily seek monetary amounts alleged to be due from the state under a contract, as is the case here.

There being now provided a remedy at law for the claimed monetary relief, we hold that the extraordinary relief of mandamus or mandatory injunctive relief as sought herein will not lie. This determination is further strengthened by the language of R. C. 2743.03, which states that the Court of Claims ''has exclusive original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code.''

It should be noted that the trial court here dismissed only that portion of the plaintiff's Complaint seeking money damages from the state. Conversely, the trial court did not dismiss those parts of the action seeking a declaration of the legal rights of the plaintiff, including the right to be notified prior to a reclassification of the nursing home, as well as whether the mandates of the Administrative Procedure Act need be followed and, if so, whether they were so followed. Further, that portion of the action seeking in-

junctive relief remains before the trial court. We specifically do not answer any of these latter issues, as they were not ruled upon by the trial court and are not before us on this appeal.

The question is raised herein as to whether in fact the plaintiff has a remedy under the new act, due to the effect of the statute of limitations set forth in R. C. 2743.16. It is our view that provisions in section 3 of the act do preserve the rights of this plaintiff to file an action on this claim in the Court of Claims. The particular portion of such section 3, applicable here, reads as follows:

"This act shall take effect on January 1, 1975. Notwithstanding section 2743.16 of the Revised Code, enacted herein, all actions commenced against the state under this chapter prior to July 1, 1975 shall be timely if commenced within two years of accrual of the cause of action or if commenced within whatever period of limitations would have been applicable to the particular cause of action if commenced against a private party. * * *"

Pursuant to such authority, we feel that the appellant may file such an action with the Court of Claims until July 1, 1975. Based upon all of the above, the assignments of error are hereby dismissed, and the judgment of the Court of Common Pleas of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., and WHITESIDE, J., concur.